**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBRA A. KRENKEL, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF <br> SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 18-16693 (MAS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Debra A. Krenkel's ("Plaintiff") appeal from the final decision of Andrew Saul, Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), denying her request for benefits. (Compl., ECF No. 1.) The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court remands the matter for further proceedings.

### I. BACKGROUND

#### A. Procedural History[1]

On July 21, 2014, Plaintiff filed an application for Social Security Disability Insurance, alleging an onset date of November 6, 2013. (AR 299-305, 322.) Plaintiff's application was denied

---

[1] The Administrative Record ("AR") is located at ECF Nos. 7-1 through 7-20. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

initially and upon reconsideration. (*Id.* at 156-58, 166-70.) The Administrative Law Judge ("ALJ") conducted an administrative hearing on September 11, 2017, during which the ALJ referred Plaintiff for a consultative examination. (*Id.* at 87-130.) The ALJ continued the hearing on March 13, 2018, following which the ALJ issued a decision finding that Plaintiff was not disabled. (*Id.* at 31-37, 44-86.) On October 2, 2018, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1.) On November 30, 2018, Plaintiff filed an appeal to the United States District Court for the District of New Jersey, and the case was assigned to former Chief Judge Jose L. Linares, U.S.D.J. (ECF No. 1.) On May 16, 2019, this case was reassigned to the Undersigned for all further proceedings. (ECF No. 13.) Plaintiff filed her moving brief on June 18, 2019 (Pl.'s Moving Br., ECF No. 19), and the Commissioner filed opposition on August 16, 2019 (Def.'s Opp'n Br., ECF No. 21).

### B.     The ALJ's Decision

On March 19, 2018, the ALJ rendered a decision. (AR 31-37.) The ALJ set forth the Social Security Administration's five-step sequential process for determining whether an individual is disabled. (*Id.* at 32-33.) The ALJ initially found that Plaintiff acquired sufficient quarters of coverage to remain insured through September 30, 2017. (*Id.* at 32.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") during the period from her alleged onset date of November 6, 2013, through her last insured date of September 30, 2017. (*Id.* at 33.) At step two, the ALJ found that Plaintiff had the severe impairments of "degenerative disc disease and bilateral shoulder degenerative joint disease." (*Id.* at 34.)

At step three, the ALJ determined that none of Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ next found that Plaintiff possessed the residual

functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) where the claimant lifts or carries 20 pounds occasionally and 10 pounds frequently, stands or walks for six of eight hours during the workday, and sits for six of eight hours during the workday." (*Id.*)

At step four, the ALJ found that, through the date last insured, Plaintiff was capable of performing past relevant work as a dental assistant. (*Id.* at 36.) The ALJ, consequently, found that Plaintiff was not under a disability from the alleged onset date of November 6, 2013, through the date last insured of September 30, 2017. (*Id.* at 37.)

## II. LEGAL STANDARD

### A. Standard of Review

On appeal from the final decision of the Commissioner of the Social Security Administration, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Daring v. Heckler*, 727 F.2d 64, 68 (3d Cir. 1984); *see Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg*

*v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

### B.     Establishing Disability

In order to be eligible for disability benefits, a claimant must be unable to "engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). For purposes of the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of [SGA] which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). For the first step, the claimant must establish that she has not engaged in any SGA since the onset of her alleged disability. 20 C.F.R. § 404.1520(a)(4)(i). For the second step, the claimant must establish that she suffers from a "severe . . . impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii). The claimant bears the burden of establishing the first two requirements, and failure to satisfy either automatically results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the first two steps are satisfied, the third step requires the claimant to provide evidence that her impairment is equal to one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d). If the claimant demonstrates that she suffers from a listed impairment or that her severe impairment is equal to a listed impairment, she is presumed to be disabled and is automatically entitled to disability benefits. *Id.* If she cannot so demonstrate, the eligibility analysis proceeds to step four. The fourth step of the analysis requires the ALJ to determine whether the claimant's RFC permits her to resume her previous employment. 20 C.F.R. § 404.1520(e). If the claimant can perform her previous line of work, then she is not "disabled" and not entitled to disability benefits. 20 C.F.R. § 404.1520(f). The burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). If the claimant is unable to return to her previous work, the analysis proceeds to step five.

At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work that is consistent with her medical impairments, age, education, past work

experience, and RFC. 20 C.F.R. § 404.1520(g). If the Commissioner cannot satisfy this burden, the claimant will receive Social Security benefits. *Id.*

## III. DISCUSSION

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. (*See generally* Pl.'s Moving Br.) The Court agrees.

> A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

*Morales*, 225 F.3d at 317. When record evidence conflicts, an ALJ may weigh the evidence but "cannot reject evidence for no reason or the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). In addition, an ALJ may not "supplant[] the opinions of [a claimant's] treating and examining physicians with his personal observation and speculation." *Morales*, 225 F.3d at 317. Moreover, "a hypothetical question posed to a vocational expert [("VE")] must reflect all of a claimant's impairments." *Rutherford*, 399 F.3d at 554.

Here, based on the lack of overall analysis in the ALJ's opinion and the lack of adequate explanation regarding weight the ALJ afforded to certain evidence, the Court finds that the ALJ's decision is not supported by substantial evidence. The Court will not discuss the ALJ's decision in detail. Rather, the Court will provide examples of the problematic aspects of the ALJ's decision.

First, Plaintiff applied for disability insurance benefits based on spinal fusion, disc replacements in her neck, herniated discs in her back, "[p]ost [c]oncussion," and rotator cuff

6

surgery. (AR 322.) In reaching his decision, the ALJ did not discuss Plaintiff's assertion of "post concussion"[2] as a basis for her disability. (*Id.* at 33-37.)

Next, the Court cannot adequately discern the rationale and weight that the ALJ afforded to Exhibit 9F/45. The ALJ referenced "Exhibit 9F/45" on two occasions. (*Id.* at 35.) The ALJ first stated, "Counsel argued that claimant was limited to sedentary work because of radiating spine and shoulder pain that prevents her from sustaining activity (hearing testimony). However, the record shows full strength and normal walking (Exhibit 9F/45)." (*Id.*)

The ALJ also opined as follows:

> The claimant testified that she is disabled from degenerative disc disease and shoulder degenerative joint disease (hearing testimony). The claimant testified that she has difficulty holding objects in her hands long (hearing testimony). The claimant testified to difficulty lifting more than five to [ten] pounds, sitting more than one hour, or being on her feet more than [fifteen] to [twenty] minutes (hearing testimony). However, the record shows full strength and normal walking (Exhibit 9F/45).

(*Id.*)

Although the ALJ supported his findings with reference to Exhibit 9F/45, Exhibit 9F does not contain a page 45. More importantly, however, Exhibit 9F does not state that Plaintiff has "full strength and normal walking." Exhibit 9F contains the results of a December 26, 2013 imaging of Plaintiff's cervical spine and lumbar spine. (*Id.* at 1037-40.) The impressions from the lumbar

---

[2] In her moving brief, Plaintiff referenced evidence of a minor brain injury and an MRI finding of two small deep white matter brain changes with possible migraine or other etiology. (Pl.'s Moving Br. 2-3 (citing Ex. 10F)). During the September 2017 hearing, Plaintiff testified as to dizziness. (AR 98, 106, 119, 121.) Plaintiff testified that she gets "very sidetracked, [and] lose[s] concentration often." (*Id.* at 122.) During the March 2018 hearing, Plaintiff also testified to dizziness. (*Id.* at 61.) In addition, the ALJ and Plaintiff's attorney both included "dizziness" in their examinations of the VE. (*Id.* at 84.) Plaintiff appeared to attribute her dizziness to her neck injury. (*Id.* at 61.) Here, the ALJ did not discuss Plaintiff's alleged dizziness, whether "post concussion" or related to her neck injury.

7

spine imaging included: (1) "[d]egenerative changes and degenerative dis[c] disease have progressed as described above"; (2) "[t]here was evidence of a posterior fusion at the L4-S1 levels with metallic transpedicular screws"; (3) [t]here was evidence of new dis[c] herniations at the L1-2, L2-3, and L3-4 levels as described above"; and (4) "[t]he combination degenerative change and abnormal dis[c] produced a mild central canal stenosis at the L3-4 level which was stable." (*Id.* at 1040.)

Exhibit 9F also contains a Progress Note from Dr. Pannuelle at Seaview Orthopaedic & Medical Associates, which states, in part, "[i]n regards to the lumbar radiculopathy that has been refractory to both conservative and aggressive management, I recommend a trial dorsal column stimulator." (*Id.* at 1043.) Finally, Exhibit 9F includes a February 19, 2015 Progress Note by Dr. Staats at Premier Pain Center. (*Id.* at 1045-47.) The Progress Note by Dr. Staats contains the closet indication the Court could locate in Exhibit 9F to the ALJ's finding that "the record shows full strength and normal walking" because the Progress Note stated that Plaintiff's "[g]ait is normal." (*Id.* at 1046.) With respect to Plaintiff's "[s]trength," however, the Progress Note stated, "iliopsoas, EHL, extension at the knee, strong & equal bilaterally, + weakness right dorsiflexion, b/l plantar flexion." (*Id.*) Here, Exhibit 9F, at the very least, did not fully support the ALJ's findings.[3] In fact, certain portions of Exhibit 9F document Plaintiff's various conditions and support Plaintiff's subjective complaints of pain. Absent the ALJ's accurate reference to exhibits, the Court cannot follow the ALJ's line of reasoning as to how he reached his decision.

---

[3] Later in his decision, the ALJ also mentioned the February 2015 exam and referenced an actual page of Exhibit 9F for his finding that Plaintiff had "full strength and a normal gait." (AR 35.) As discussed, however, while the exhibit stated, "[g]ait is normal," it did not state that Plaintiff has "full strength." (*Id.* at 1046.)

8

Finally, the ALJ based his decision, at least in part, on his observations of Plaintiff during the administrative hearing. (AR 36.) In support of his findings, the ALJ stated, "[m]oreover, the claimant appeared in good condition during the hearing (hearing testimony)." (*Id.*) The ALJ also stated, "[t]he light work findings are supported by the claimant's normal physical presentation during the hearing (hearing testimony)." (*Id.*)

Additionally, the ALJ sent Plaintiff for a consultative exam between the first and second hearings.[4] (*Id.* at 48, 50.) The consultative examiner assigned more restrictions to Plaintiff's ability to perform work than the ALJ assigned in his decision. (*Id.* at 34, 36.) In reaching his decision, the ALJ stated:

> In a third party report, the claimant's husband found that the claimant is limited in lifting, bending, reaching, walking, sitting, stair climbing, completing tasks, and using hands. . . . Dr. Christopher Spagauola[,] M.D. found that the claimant has pain and muscle weakness. . . . Dr. Robert Dennis[,] M.D. found that the claimant has a 100 percent disability. . . . The claimant's consultative examiner found that the claimant could lift up to [ten] pounds, could sit three hours, stand two hours, walk two hours, is limited in postural activities, reaching, fingering, feeling, pushing, and pulling, and environmental exposure. . . . However, their opinions are contradicted by the claimant's generally normal physical presentation during the hearing (hearing testimony). The postural activities are contradicted by tests in the record show[ing] normal walking and full strength. (Exhibit 24F/3-4.) Therefore, their opinions are granted little weight.

(*Id.* at 36.)

It appears from the ALJ's decision, therefore, that the ALJ provided significant weight to Plaintiff's presentation during the hearing. Indeed, the ALJ's only two proffered reasons for

---

[4] In ordering the consultative examination, the ALJ stated, "[i]t's kind of confusing because all these doctors are giving opinions based on different accidents and residuals and all this other stuff. . . . I'm going to send you out for a regular internal medicine once-over from a doctor. And just see what he says. And he'll send us back a report, and I'll send it to counsel. . . . I don't feel comfortable making an evaluation based on what I've got." (AR 128-29.)

9

providing "little weight" to relevant evidence of record, including the determinations of the consultative examiner, were one exhibit and Plaintiff's appearance at the hearing. (*Id.*) An ALJ, however, may not "supplant[] the opinions of [a claimant's] treating and examining physicians with his personal observation and speculation." *Morales*, 225 F.3d at 317.

Notably, neither the first nor the second hearing took place in person. (AR 46, 89.) Rather, both hearings were conducted via videoconference. (*Id.*) Additionally, the transcript from the March 2018 videoconference hearing reflects that Plaintiff and her husband, a hearing witness, both had difficulty communicating with the ALJ. (*Id.* at 46-80.) Indeed, the transcript reflects that Plaintiff could not hear the questioner on more than one occasion and the transcript contains numerous instances of "[i]naudible" responses. (*Id.* at 57, 63-80.) Here, in light of the extensive record in the present case and the lack of additional reasoning in the ALJ's decision to buttress his findings, the Court cannot find that the ALJ's attribution of weight to Plaintiff's appearance at the hearing was supported by substantial evidence.

Significantly, access to the Commissioner's reasoning is essential to meaningful Court review:

> [U]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative [testimony], to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978). Based on its consideration of the specific administrative record and pleadings in the current matter, the Court is constrained to remand this matter.

## IV.  CONCLUSION

For the foregoing reasons, the Court remands this matter for further proceedings. An Order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** April 30, 2020